**CHEN Zhou Chai, Petitioner,**

v.

**William J. CARROLL, District Director, Immigration and Naturalization Service (Washington District), and David L. Milhollen, Director of the Executive Office of Immigration Review and Chairman of the Board of Immigration Appeals, Respondents.**

Civ. A. No. 94–0037–A.

United States District Court, E.D. Virginia, Alexandria Division.

May 4, 1994.

Rebecca Stack Campbell, Covington & Burling, Washington, DC, for petitioner.

Helen Fahey, U.S. Atty., E.D.Va., Rebecca O. Hidalgo, Asst. U.S. Atty., Alexandria, VA, for respondents.

*MEMORANDUM OPINION*

HILTON, District Judge.

This matter came before the Court on Petitioner's petition for a Writ of Habeas Corpus. Petitioner Chen Zhou Chai seeks a reversal of the asylum ruling of the Board of Immigration Appeals ("Board") in his case by attacking a precedent decision of the Board concerning asylum claims based on the family planning policies of the Peoples Republic of China ("PRC"). Petitioner contends that he suffered past persecution and harbors a well-founded fear of persecution "on account of" political opinion, as defined in the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.* (1988), and asserts that the Board's decision in *Matter of Chang,* Int.Dec. 3107 (BIA 1989), has been either superseded by subsequent case law or certain interim regulations on the issue.[1]

The Board has ruled that the PRC's family planning policies do not constitute persecution "on account of" political opinion under the circumstances of petitioner's case. The Board found that persecution "on account of" political opinion requires more than a generalized political motive, and a petitioner must show that government officials were motivated to persecute him because of political opinion. *INS v. Elias–Zacarias,* 502 U.S. 478, ––––––––, 112 S.Ct. 812, 816–17, 117 L.Ed.2d 38 (1992).

Petitioner is a native and citizen of PRC. On June 6, 1993, he arrived in the United States by paying to be smuggled aboard a vessel called the "Golden Venture," which ran aground in New York. On June 7, 1993,

1. An interim rule was published in January 1990. The interim rule "clarifie[d] the burden of proof for applicants of refugee status, withholding of deportation and asylum by establishing that an alien fleeing coerced population control policies of forced abortions or sterilization may be considered to have a clear probability (for withholding of deportation) or well-founded fear (for asylum) of persecution on account of political opinion." 55 Fed.Reg. 2804 (January 29, 1990). This interim rule was to amend the regulations for withholding of deportation, 8 C.F.R. § 242, and for asylum, 8 C.F.R. § 208. However, a comprehensive revision of these regulations published in July 1990 superseded the language of the interim rule. 55 Fed.Reg. 30674 (July 27, 1990).

On January 15, 1993, the out-going Attorney General signed a "final rule," which would have amended 8 C.F.R. §§ 208.13 and 208.16 (1992) to specifically address asylum claims based upon coercive population control policies. However, the January 1993 rule was never published in the Federal Register. Rather, the Director of the Office of Management and Budget, on January 22, 1993, directed agencies to withdraw from the Federal Register for approval all regulations not yet published in the Federal Register. 58 Fed. Reg. 6074 (January 25, 1993). In accordance with this directive, the Acting Assistant Attorney General of the Office of Legal Counsel instructed the Office of the Federal Register, on January 22, 1993, not to publish the January 1993 rule. Accordingly, the rule was not published, and it did not take effect.

the Immigration and Naturalization Service ("INS") charged petitioner with excludability for failing to possess a valid entry document under Sections 212(a)(7)(A)(i) and 212(a)(7)(B)(i)(I & II) of the INA, 8 U.S.C. §§ 1182(a)(7)(A)(i) and 1182(a)(7)(B)(i)(I & II). Petitioner sought relief by applying for asylum pursuant to Section 208 of the INA, 8 U.S.C. § 1158, and for withholding of deportation pursuant to Section 243(h) of the Act, 8 U.S.C. § 1253(h). At a hearing on June 24, 1993, the Immigration Judge ("IJ") found petitioner subject to exclusion and deportation for attempting to enter the United States without a valid visa.

On July 22, 1993, petitioner's applications for asylum and withholding of deportation were heard at an evidentiary hearing before the Immigration Judge ("IJ"). At that hearing, petitioner testified that he is 41 years old and that, until he came to the United States, he worked at a government food distribution cooperative or commune near the city of Fouzou. Petitioner testified that in January 1992, after he had disagreed with the head of the commune's decision to fine him a nominal amount of 5 yuan for missing two meetings of the commune, government population control officials took his wife to the regional hospital and coerced her to undergo an abortion against her will. Also, previously in 1988 or 1989, the head of the commune asked Chen to become a member of the Communist Party, but Chen testified that he did not want to become a member.

Petitioner testified that his persecution by the head of the commune continued thereafter when he was coerced by government officials to undergo surgical sterilization. Petitioner also testified that, after his coerced sterilization, the head of the government's commune required petitioner to pay for five years between two and three times petitioner's annual salary as a fine for having a second child who is now 12 years old, and against whom the government had not taken any prior action under population control policy. After the operation, in October 1992, the head of the commune told petitioner that he would have to pay the 20,000 yuan fine off in five years or else his wife would be sterilized. As Chen continued to disobey commune orders that he pay 5 yuan for missing cooperative meetings or 20,000 yuan for his second child, he testified that he was ultimately barred from working and fled to the United States.

On August 31, 1993, the IJ issued his decision denying petitioner asylum and withholding of deportation relief. The IJ based his decision on the grounds that petitioner's opposition and disagreement with coercive population control policies applied to him by the PRC is excluded from the scope of political opinion protected by the INA, citing *Matter of Chang*. The IJ first found that petitioner did not make an entry into the United States because he was not free from official restraint. Essentially, the IJ found that Chen was not credible in claiming that political nonconformity was the motive for the family planning enforcement against his family. The IJ pointed out that the limitation on children is applicable to all inhabitants of the PRC. Moreover, the IJ found no evidence that family planning policies are used as a means to punish political dissent. Finally, the IJ held that the "most incongruous aspect" of petitioner's testimony was his claim that he is a "recalcitrant political dissident," and that he suffered no punishment by the government until his wife became pregnant in 1992.

As for his asylum claim, the IJ found that Chen failed to establish by a preponderance of credible evidence that the proximate cause of his alleged persecution in the PRC was his political dissidence rather than his failure to comply with the birth control policy. The IJ emphasized that the sequence of events belied petitioner's claim that political dissidence caused his problems. In 1988 or 1989, he refused to join the Communist Party, and no action was taken for more than three years thereafter. Only after his wife became pregnant for the third time was petitioner subject to forced sterilization and a fine. Therefore, the IJ held that the proximate cause of these events was his violation of the birth control policy and not his alleged political dissidence.

In looking to the motivation of the alleged persecutor as required, the IJ found that the evidence showed that the PRC government applies its family planning policies to the

entire population. He also held that there was no evidence of an invidious application of the policies toward petitioner and his wife, and the record failed to show that the birth control policies were a manifestation of communist political doctrine or used to enforce political conformity. Ultimately, the IJ held that petitioner had failed to demonstrate that he possessed an immutable trait or belief that was of adverse interest to a potential persecutor in the PRC and, therefore, failed to meet the definition of a "refugee" under the INA.

Petitioner filed a timely notice of appeal to the Board on September 13, 1993. On January 3, 1993, the Board adopted and affirmed the IJ's decision. In answering petitioner's appeal issues, the Board found that he failed to provide evidence establishing a factual nexus between his failure to attend commune meetings and the enforcement of the PRC's family planning policies against him and his wife.

■ Contrary to Chen's contentions, this Court has jurisdiction under section 106(b) of the INA, 8 U.S.C. § 1105a(b), because petitioner has not effected an "entry" into the United States and, as required by the INA, petitioner's case properly continues in exclusion proceedings. Petitioner argues that the Board "violates" the INA by requiring that an alien by free of official restraint before he enters the United States. The INA provides that an " 'entry' means any coming of an alien into the United States, from a foreign port or place from an outlying possession, whether voluntary or otherwise ..." Section 101(a)(13) of the INA, 8 U.S.C. § 1101(a)(13). Congress has required that those seeking admission to the United States are subject to exclusion proceedings to determine whether they be allowed to enter or shall be excluded.

■ Here, although he came voluntarily, petitioner never "entered" the United States because he failed to prove that he was free from official restraint. It is well-established that an alien is required to be detained at the border pending formal disposition of his request for admission, *Kaplan v. Tod*, 267 U.S. 228, 230, 45 S.Ct. 257, 257, 69 L.Ed. 585 (1925), and that there is no formal "entry" until the alien has been freed from this official restraint. *See Lazarescu v. United States*, 199 F.2d 898, 900 (4th Cir.1952). As a result, physical presence in the United States alone is not enough to effectuate an "entry".[2] *See Leng May Ma v. INS*, 357 U.S. 185, 188, 78 S.Ct. 1072, 1074, 2 L.Ed.2d 1246 (1958). Petitioner has failed to show that he was ever free from official restraint, despite being physically present in the United States. Therefore, this Court has jurisdiction because petitioner never effectuated an "entry" as required by the INA. Thus, his case properly proceeds as one of exclusion.[3]

■ Under section 208(a) of the INA, the Attorney General, in her discretion, may grant asylum to an alien if it is determined that the alien is a "refugee" within the meaning of section 101(a)(42)(A). *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987). Section 101(a)(42)(A) defines a "refugee" as a person who is unable to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[4]

2. Petitioner's argument that the "plain language" of the INA permits an "entry" into the United States by mere physical presence, is undermined by the clear and unambiguous language and structure of the INA itself. The United States Constitution, embodying the sovereign state's inherent right to exclude aliens, commits enforcement of this right to Congress which, in turn, may authorize officers of the Executive Branch to exercise it. *Palma v. Verdeyen*, 676 F.2d 100, 103 (4th Cir.1982). Therefore, Congress intended the INA to require, that for admission to the United States, an alien must be stopped at the border for an inspection and a determination of admission. 8 U.S.C. § 1225(a).

3. This Court, whose jurisdiction for review in this exclusion proceeding arises under 8 U.S.C. § 1105a(b), is limited to a review of the record. *Kessler v. Strecker*, 307 U.S. 22, 34, 59 S.Ct. 694, 700, 83 L.Ed. 1082 (1939).

4. Because the ultimate grant of asylum is discretionary, an asylum determination involves two stages: (1) a determination of statutory eligibility based on the "well-founded fear of persecution" standard, and (2) if statutory eligibility is established, a determination whether to exercise discretion in favor of the grant of asylum. *See Zamora–Morel v. INS*, 905 F.2d 833, 837 (5th

8 U.S.C. § 1101(a)(42)(A); *see also Figeroa v. INS*, 886 F.2d 76, 79 (4th Cir.1989).

■ An applicant for asylum has the burden of showing entitlement to the relief requested. 8 C.F.R. §§ 208.5 & 242.17(c) (1994). Eligibility for asylum is based, essentially, upon a "reasonable person" test. *M.A. v. INS*, 899 F.2d 304, 311 (4th Cir.1990) (en banc). Under this test, determinations of whether an individual possesses a "well-founded fear of persecution" require both a subjective inquiry into the individual's actual feelings and an objective assessment of the specific facts on which his fear is based. *Huaman–Cornelio v. INS*, 979 F.2d 995, 999 (4th Cir.1992).

■ The Board's factual determinations, on which it bases it conclusions regarding an alien's eligibility for asylum or withholding of deportation, are reviewed under the substantial evidence standard. *Id.* Moreover, under this standard, a reviewing court may not reverse the Board's factual determinations unless the court finds the evidence not only supports a contrary conclusion, but compels it. *Elias–Zacarias*, 502 U.S. at —— & n. 1, 112 S.Ct. at 815 & n. 1; *Huaman–Cornelio*, 979 F.2d at 999. The Supreme Court has held that the Board's determination that an alien is not eligible for asylum must be upheld unless the alien shows that the evidence he or she presented "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at ——, 112 S.Ct. at 817. In addition, although the Court reviews the Board's legal conclusions *de novo*, the Court employs a deferential standard of review in which the legal determinations of the Board in interpreting the INA are entitled to great deference. *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994).

■ In adopting the IJ's decision, the Board did not find the petitioner credible in claiming that the motive behind the enforcement of the family planning policies was his political nonconformity with the leadership of the commune. Instead, the IJ and the Board found that the enforcement of the family planning policies against the Chen family was because of general family planning enforcement and not because of his alleged political dissidence. The objective evidence in this case does not support Chen's claims. Chen testified to a sequence of events occurring over a period of four to five years. He stated that he declined to join the Communist Party in 1988 or 1989. However, only when petitioner's wife was discovered pregnant for a third time were the family planning policies enforced against his family. Petitioner, therefore, has failed to satisfy his burden of providing credible and persuasive evidence in support of his claim that his alleged political nonconformity was the motive for the family planning policy enforcement against his family.

■ The Board's decision is supported by *Matter of Chang*, which is a reasonable interpretation of the laws governing asylum in the United States, and which is controlling in this case. In *Matter of Chang*, the Board held that disagreement with the PRC's coercive population control policy is not political opinion for purposes of determining exclusion under 8 U.S.C. § 1158(a), or for withholding of deportation under 8 U.S.C. § 1253(h)(1). The Board issued its ruling in *Matter of Chang* in 1989, and it has adhered to its initial construction of the statute ever since, despite the unsuccessful regulatory efforts reflecting a different statutory interpretation. The Board remains entitled to deference in its construction of the statutory provisions at issue here. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Here, there are no "compelling indications" that the Board's construction of the statute was wrong. *Campos–Guardado v. INS*, 809 F.2d 285, 289 (5th Cir.1987). The language of the statute itself does not specifically address whether asylum eligibility can be established based upon coercive population control policies that are applied to a country's populace in general. In this situation, the Board's decision is entitled to this Court's deference. *See Chevron*, 467 U.S. at 843,

Cir.1990); *Ipina v. INS*, 868 F.2d 511, 513 (1st Cir.1989).

844, 104 S.Ct. at 2781, 2782 (explaining that where there is no "unambiguously expressed intent of Congress," a court "may not substitute its own construction of a statutory provision for that of the agency.").

Not only is the Board's decision in *Matter of Chang* legally correct, it is consistent with the Supreme Court's decision in *INS v. Elias–Zacarias*, 502 U.S. at ——, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In *Elias–Zacarias*, the Supreme Court addressed whether attempts by guerrillas to force a person into its military "necessarily constitutes 'persecution on account of . . . political opinion' under section 101(a)(42) of the Immigration and Nationality Act. . . ." 502 U.S. at ——, 112 S.Ct. at 814. The Court answered this question negatively and, in so doing, established several important principles in asylum law.

First, the Court held that in order to reverse a finding by the Board that an alien failed to establish a well-founded fear of persecution, the record must compel the conclusion that the applicant has expressed a political opinion, and in must compel the further conclusion that the "persecutor" would persecute the applicant specifically because of that political opinion. *Elias–Zacarias*, 502 U.S. at ———–—— & n. 1, 112 S.Ct. at 815–16 & n. 1. Second, the Court held that the mere existence of a general political motive underlying the persecutor's actions is insufficient to establish asylum eligibility because the focus of the statute is upon the victim's political opinion, not the persecutor's. *Id.* at ——, 112 S.Ct. at 816. Third, the Court emphasized that since the statute makes motive critical, the applicant must provide some evidence that the persecutor's motive is to harm the applicant specifically because of his or her political opinion. *Id.* at ———–——, 112 S.Ct. at 817–18. Thus, the Court held that because Elias–Zacarias had failed to show that he would be persecuted by the guerrillas on account of his political opinion, rather than simply for his refusal to fight with them, he failed to show that he was eligible for asylum, even if his refusal to fight could be considered a political opinion. *Id.* at ——, 112 S.Ct. at 816.

Given that Chen fails to establish a nexus between the motives of a commune official and his alleged political opinions, the Board in this case reasonably followed the Supreme Court's holding in *Elias–Zacarias*. It is difficult to discern exactly what political opinion Chen claims is the basis of his persecution. He argues that he is an anti-Communist and because of this belief, he refused to attend commune meetings and, thus, was supposedly persecuted. However, he testified that he has lived in the commune all his life and that, despite the actions taken against him, he continued to live and work in the commune. He also stated that the discussions at the commune meetings were not political but, rather, about the market of food sales. Furthermore, he testified that, to this day, his wife and children continue to live in their commune house.

■■■ On the other hand, he claims that his political opinion at issue is his opposition of the family planning policies themselves. Yet, the record provides no evidence that the family planning policies are enforced invidiously against those opposing them or that Chen ever made his opposition known to Jian or another authority prior to the policies' enforcement. Petitioner has failed to meet his burden of proof in showing that he was persecuted on account of his political opinion. He provides no credible evidence that the enforcement of the family planning policies against him was a pretext for punishing him for allegedly anti-Communist views or for any previously existing opposition to those policies. Rather, petitioner went about his life uninterrupted for a full four to five years after his refusal to join the Communist Party. With respect to petitioner's refusal to pay a nominal fine, it is well settled that government reaction to refusal to pay a nominal fine does not constitute persecution under the INA. *See Kubon v. INS*, 913 F.2d 386, 388 (7th Cir.1990).

According to petitioner's own testimony, it was not until the third pregnancy that Jian sent him a notice of sterilization. In addition, it was only after the third pregnancy came to Jian's attention that petitioner was fined for having a second child. The objective evidence in this case does not support petitioner's claims of persecution based on his political opinions. Petitioner simply fails

to establish a nexus between his alleged anti-Communist or anti-family planning views and Jian's actions against him.

It is well settled that "an alien who has failed to raise claims during an appeal to the BIA has waived his right to raise those claims before a federal court on appeal of the BIA's decision." *Farrokhi v. INS*, 900 F.2d 697, 700 (4th Cir.1990). Therefore, this Court need not consider petitioner's argument about allegedly valid regulations promulgated by the Attorney General in January 1990 and in January 1993 as binding upon the Board, because he never raised this claim before the Board. Only before this Court, for the first time, does Chen raise the argument that the January 1990 and January 1993 rules are independently binding. Because he failed to exhaust his administrative remedies, the Court need not address these claims.