Xiu Qin CHEN, Petitioner,

v.

William SLATTERY, etc.,
et ano., Respondents.

No. CV–94–2568 (CPS).

United States District Court,
E.D. New York.

Sept. 6, 1994.

Craig Wilson, New York City, for petitioner.

Zachary W. Carter, U.S. Atty., E.D.N.Y. by Scott Dunn, Richard Molot, Brooklyn, NY, for respondents.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In this habeas petition filed by a former citizen of the People's Republic of China (the "PRC") seeking political asylum in the United States, petitioner contends that the Board of Immigration Appeals (the "BIA") used an improper standard in denying her applications for asylum and withholding of deportation. In the alternative, petitioner contends that, even under the standard employed by the BIA, her asylum claim should not have been rejected. The respondents argue that the BIA's decision should be upheld because the BIA used the proper standard, and substantial evidence supports the determination that petitioner is not entitled to asylum or withholding of deportation as a "refugee" within the meaning of section 101(a)(42) of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. 1101(a)(42). For the reasons discussed below, the petition

is granted, and petitioner's application for asylum is remanded to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

This is the second action before this Court and one of a number pending in other jurisdictions stemming from the Department of Justice's continuing failure to resolve the controversy over asylum applications based on the PRC's family planning practices. *See Wang v. Reno,* CV–93–5523(CPS) (E.D.N.Y.). The genesis of the controversy is the BIA's decision in *Matter of Chang,* Int. Dec. 3107 (BIA May 12, 1989), 1989 WL 247513 (BIA 1989) ("Chang"), in which the Board found that the PRC's "one couple, one child" family planning policy did not include officially-sanctioned mandatory sterilization and was not "on its face persecutive." That decision has been assailed from various quarters, yet is still followed by the BIA. *See Matter of G—,* Int. Dec. 3215 (BIA December 8, 1993) (reaffirming reliance on *Chang* ). Petitioner—like the plaintiffs in *Wang v. Reno* and, as described below, members of Congress, one President, and two Attorneys General—seeks to overturn *Chang.*

In *Chang,* the BIA held that, while the PRC's family planning policy could be implemented in a way that would serve as a basis for asylum under the INA, "[t]o the extent … that such a policy is solely tied to controlling population, rather than as a guise for acting against people protected by the Act, we cannot find that persons who do not wish to have the policy applied to them are victims of persecution or have a well-founded fear of persecution within the present scope of the Act."

In its decision in *Chang,* the BIA also declined to follow an August 5, 1988 memorandum of the Attorney General issued to the Commissioner of the INS directing that "INS asylum adjudicators" give "careful consideration" to the asylum applications of PRC nationals who refused to abort a pregnancy or undergo sterilization as an "act of conscience." [1] In *Chang,* the BIA held that

1. Then Attorney General Meese directed that—

all INS asylum adjudicators are to give careful consideration to applications from nationals of

it was not bound by the policy directives of the Attorney General.

Congress reacted to the BIA decision by adding an amendment which would have overruled *Chang* to the Emergency Chinese Immigration Relief Act of 1989. The bill itself was spurred by the events in Tiananmen Square in June of 1989. *See generally Di v. Carroll*, 842 F.Supp. 858, 863 (E.D.Va. 1994). Congress passed the bill, along with the amendment, at the end of November 1989.[2] *Id.* Although President Bush rejected the new legislation, he directed the Attorney General to give "enhanced consideration" under the immigration laws to "individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization." *Memorandum of Disapproval for the Emergency Chinese Immigration Relief Act of 1989*, 25 Weekly Compilation of Presidential Documents at 1853–54 (1989).

In January 1990, then Attorney General Thornburgh promulgated an interim rule (the "January 1990 Interim Rule") which was published in the Federal Register with requests for comments. *See* 55 Fed.Reg. 2803 (1990). Interim Rule 2803 became effective on January 29, 1990, and amended C.F.R. § 208.5 as it then read to provide:

> the People's Republic of China who express a fear of persecution upon return to the PRC because they refuse to abort a pregnancy or resist sterilization after the birth of a second or subsequent child in violation of the Chinese Communist Party directives on population. If such refusal is undertaken as an act of conscience with full awareness of the urgent priority assigned to that policy by high level PRC officials and local party cadres at all levels as well as of the severe consequences which may be imposed for violation of the policy, it may be appropriate to view such refusal as an act of political defiance sufficient to establish refugee status under 8 U.S.C. § 1101(a)(42)(A). Indeed there is evidence to support the assertion that such an act is viewed by PRC officials as 'political dissent.' Therefore, a finding of the requisite 'well-founded fear of persecution' under these circumstances is reasonable.

Memorandum for Alan C. Nelson, Commissioner Immigration and Naturalization Service From Edwin Meese III. (August 5, 1988). Pl.Ex. A.

2. As amended, the Emergency Chinese Immigration Relief Act of 1989 provided, in part, as follows:

(a) Burden generally. . . .

(b) Related to coercive family planning policies. . . .

(1) Aliens who have a well-founded fear that they will be required to abort a pregnancy or to be sterilized because of their country's family planning policies may be granted asylum on the ground of persecution on account of political opinion.

(2) An applicant who establishes that the applicant (or the applicant's spouse) has refused to abort a pregnancy or to be sterilized in violation of a country's family planning policy, and who has a well-founded fear that he or she will be required to abort the pregnancy or to be sterilized or otherwise persecuted if the applicant were returned to such country may be granted asylum.

*Id.*

On April 11, 1990, President Bush issued Executive Order 12,711, which directed the Attorney General to take steps to slow or stop the deportation or exclusion of PRC nationals from the United States. The Executive Order also reiterated the directive to the Attorney General and the Secretary of State to "provide for enhanced consideration under the immigration laws for individuals"

> Sec. 3 STANDARDS TO BE APPLIED IN ADJUDICATING APPLICATIONS FOR ASYLUM, WITHHOLDING OF DEPORTATION, AND REFUGEE STATUS FROM CHINESE FLEEING COERCIVE POPULATION CONTROL POLICIES.
>
> (a) IN GENERAL—With respect to the adjudication of all applications for asylum, withholding of deportation, or refugee status from nationals of China filed before, on, or after the date of the enactment of this Act, careful consideration shall be given to such an applicant who expresses a fear of persecution upon return to China related to China's "one couple, one child" family planning policy. If the applicant establishes that such applicant has refused to abort or be sterilized, such applicant shall be considered to have established a well-founded fear of persecution, if returned to China, on the basis of political opinion consistent with paragraph (42)(A) of section 101(a) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)).

Emergency Chinese Immigration Relief Act of 1989 (H.R. 2712).

who expressed a fear of persecution on return to their homelands due to policies of forced abortion or coerced sterilization "as implemented by [the January 1990 Interim Rule]."[3] Executive Order 12,711 of April 11, 1990, published on April 13, 1990 at 55 Fed. Reg. 13897 (1990).

In July 1990, then Attorney General Thornburgh published a final rule which established the procedures to be used in determining asylum under section 208 and withholding of deportation under section 243(h) of the INA, as amended by the Refugee Act of 1980. *See* 55 Fed.Reg. 30674 (July 27, 1990) (the "July 1990 Final Rule"). The July 1990 Final Rule not only made no mention of the January 1990 Interim Rule, but it also changed sections of the C.F.R. which had been changed by the January 1990 Interim Rule so that the resulting regulations concerning asylum procedures made no mention of coercive family planning practices. The result of the July 1990 Final Rule was effectively to eliminate the January 1990 Interim Rule without explanation.

As noted in *Wang*, considerable confusion was created by the July 1990 Final Rule. In April 1991, the Chief Attorney Examiner of the BIA made a written inquiry to the Appellate Counsel of the INS requesting the position of the INS on the status of the January 1990 Interim Rule in light of the July 1990 Final Rule. The Appellate Counsel responded that the January 1990 Interim Rule had not been amended or repealed and that the interim regulation remained the policy of the INS. In a memorandum to Regional Counsel and District Counsel dated November 7, 1991, the Office of the General Counsel of the INS stated that Department of Justice and INS "policy with respect to aliens claiming asylum or withholding of deportation based upon coercive family planning policies is that the application of such coercive policies does constitute persecution on account of political opinion" and directed that INS trial attorneys act accordingly.

In January 1993 the Attorney General signed a final rule (the "January 1993 Rule"), similar to the January 1990 Interim Rule, which specifically stated that its intent was "to supersede the decision in *Matter of Chang* ... to the extent that it held that the threat of forced sterilization pursuant to a government family planning policy does not give rise to a well-founded fear of persecution on account of political opinion...." The January 1993 Rule specifically mentioned comments made on the January 1990 Interim Rule and then amended the regulations so an applicant (and the applicant's spouse, if also applying) would be found to be a refugee on the basis of political opinion if the applicant could establish that

> pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion or coerced sterilization, the applicant has been forced to abort a pregnancy or to undergo sterilization or has been persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such persecution.

The January 1993 Rule also provided that an applicant (and the applicant's spouse, if also an applicant) would be

> found to be a refugee on the basis of a well-founded fear of persecution on account of political opinion if the applicant establishes a well-founded fear that, pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion or coerced sterilization, the applicant will be forced to abort a pregnancy or undergo sterilization or will be persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or

---

**3.** The Executive Order stated:
The Secretary of State and the Attorney General are directed to provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990.
Executive Order 12,711 of April 11, 1990.

avail himself or herself of the protection of, that country because of such fear.

The January 1993 Rule was signed by the Attorney General in the last few days of the Bush Administration and then sent to the Federal Register, where it was made available for public inspection. The January 1993 Rule was scheduled for publication on January 25, 1993.

However, immediately after President Clinton was inaugurated on January 22, 1993—three days before the scheduled publication of the January 1993 Rule—the proposed director of the Office of Management and Budget issued a directive which prohibited the publication of any new regulation that was not approved by a Clinton-appointed agency head. As a result, the January 1993 Rule was not published.

Finally, in February 1993, regulations governing asylum applications were again published in the Code of Federal Regulations. Those regulations do not incorporate the January 1993 Rule nor make any mention of it. *See* 8 C.F.R. § 103, 208, 236, 242, 253 (1993).

In December 1993 two cases of individuals seeking asylum based on the population control practices of the PRC were referred by the BIA to the Attorney General for her review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) to resolve the conflict between Executive Order 12,711 and *Chang*. The Attorney General declined to resolve the conflict, stating cryptically that "[a]fter review, it is apparent that the BIA's decisions in these cases do not require a determination that one or the other of these standards is lawful and binding."

Petitioner Chen, Xiu Qing ("Chen") (Petitioner's name is given in the Chinese fashion, with last name first) now seeks relief from the application of *Chang* to her claim for asylum, relying upon the Executive's vacillation as the basis of her claim. Petitioner is a twenty-nine year old native and citizen of the PRC from the Fijian Province. She is married and has one child, a son, who is still in the PRC under the care of her parents. Petitioner arrived in the United States at Kennedy International Airport on July 31, 1993, and was immediately taken into INS custody and placed in exclusion proceedings.

At the airport, Chen was questioned by an immigration inspector. According to the "Record of Sworn Statement in Affidavit Form," petitioner stated that neither she nor any member of her family had been subjected to or threatened with persecution by the government of the PRC. AR (Administrative Record) at 68. When asked why she had traveled to this country, she allegedly replied, "I am coming to look for work and my husband. I am hoping to stay in America forever."

While in INS custody, petitioner applied for political asylum and the withholding of deportation. In her application, she apparently stated for the first time, "I left my native country because I was persecuted by the Chinese government for my political opinions concerning the inhumane policy of 'one family one child,'" which she says she "frankly expressed" to local officials. AR at 77. She also asserted that after her child was born in 1987 she was denied a "birth permit" because of her opposition to the policy and that officials began to question her about her use of contraceptives.

Petitioner was then provided with a hearing on her claims for asylum and withholding of deportation before Immigration Judge Howard Cohen on October 28, 1993, at which she was represented by counsel. At the hearing, petitioner provided more detail about her claims. Petitioner stated that the answers recorded on the "Record of Sworn Statement Recorded in Affidavit Form" were either mistaken or incorrect, in part because the immigration inspector did not allow her to explain why she had come to the United States. She testified that she had opposed the family planning policies of the government to local "cadres" in her village, telling them that policy was intended as a means of exerting control and limiting the individual freedom of the citizens of the PRC without actually improving their lives. Petitioner said that she had complained to local authorities that the policy created corruption because it was used to preclude violators from receiving employment.

She also testified that, because of her opposition to the policy and her failure to seek

permission to have a child, the local authorities refused to allow her to register her first born. Without the registration, petitioner testified, she would have to pay higher fees for her son to attend school. Petitioner further testified that after the birth of her son local authorities sought to have her apply for birth control or sterilization. She states that she refused, in part because she had not been allowed to register her son. She also testified that local authorities closed her hair dressing business in 1992 because of her opposition to the birth control policy. When asked about her husband, she told the immigration judge that he had left the PRC to go to the United States but that she did not know where he was located. She also testified that her reason for leaving the PRC was because she was afraid she would be sterilized but admitted that her husband was not sterilized and that she had never received a written order to be sterilized or been fined. She also stated that she paid $11,000 to a smuggler to pay for her passage to the United States.

After the hearing, Judge Cohen gave an oral decision in which he denied petitioner's request for political asylum and the withholding of deportation. Judge Cohen questioned petitioner's credibility and determined that petitioner's claims of persecution were "concocted" for the purpose of seeking asylum in the United States. Judge Cohen ruled that petitioner had failed to meet the standard set out by the BIA in *Chang* for showing that the PRC's family planning policy is a basis for political asylum. Petitioner was ordered excluded and deported from the United States.

Petitioner then appealed to the BIA, arguing that her testimony should have been accepted as credible and that the immigration judge should not have relied on *Chang*. On March 14, 1994, the BIA dismissed petitioner's appeal, holding that petitioner was not eligible for asylum under *Chang*. A final order of deportation and exclusion was then entered against her.

On May 27, 1994, petitioner sought an order directing the respondents to show cause why a temporary restraining order should not be issued which would prevent the respondents from deporting and excluding petitioner from the United States during the pendency of this action. Before any order was issued, respondents voluntarily agreed not to deport or exclude petitioner. Respondents have now filed papers in opposition to the habeas portion of Chen's "Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief." Accordingly, to the extent that petitioner is still asserting claims for preliminary relief, those claims are denied as moot.

Petitioner seeks habeas, declaratory, and injunctive relief under 28 U.S.C. §§ 2201 and 2241. Petitioner argues that she and her family have been "targeted specifically" for excessively harsh treatment because of their failure to comply with what she alleges is the PRC's compulsory abortion and sterilization policy. According to petitioner,

[w]hile her choices regarding family planning may not appear at first to [be] inherently political, China considers violators of its mandatory policies "class enemies," and thus imputes political opinion to them. Such dissidents are subjected to disproportionately severe punishment and extra-legal repercussions. Therefore, as in the aforementioned cases, the retribution already suffered or faced by Ms. Chen and her family constitutes persecution on account of political opinion.

Petition at 30 (citations omitted).

Petitioner challenges the BIA's decision on a variety of grounds. First, she asserts that *Chang* violates the Refugee Act of 1980 by declaring that coercive population control policies cannot constitute persecution. Petitioner contends that when these policies take on the form of invasive procedures such as sterilization and forced abortion which impinge on fundamental rights is inherently persecutive. Second, petitioner argues that *Chang* is in conflict with interim regulations and Executive Order No. 12711. Third, petitioner contends that the January 1993 Rule invalidates *Chang*. Fourth, petitioner charges that she was denied the right to a fair hearing because the BIA simply applied the standard for asylum stated in *Chang* Petitioner argues that the immigration judge "invoked *Chang* (contrary to the language of

the decision itself) to pretermit a meaningful examination of Ms. Chen's asylum application." Petitioner asserts that the effect of the immigration judge's action was to preclude her from attempting to establish either "imputed political opinion" or that the sanctions imposed under the PRC's family planning policies are sufficiently oppressive that the enforcement itself constitutes persecution. Petitioner contends that she can establish that she opposes or is perceived as opposing government policy which "invades the realm of fundamental human rights, and that being perceived as an enemy of the government, she is subjected to excessive and impermissible "suffering or harm" on account of her difference with the PRC government policies.

## DISCUSSION

■ Under Section 208(a) of the INA, 8 U.S.C. § 1158(a), the Attorney General is authorized to grant asylum to an alien who is a "refugee." The INA defines a refugee, in relevant part, as an alien who is either unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A); *see INS v. Elias–Zacarias,* 502 U.S. 478, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). Fear of persecution is "well-founded" if "a reasonable person in the same circumstances would have such a fear." *Sotelo–Aquije v. Slattery,* 17 F.3d 33, 35 (2d Cir.1994). Although the asylum-seeker bears the burden of proof under the regulations promulgated by the Attorney General, *see* 8 C.F.R. §§ 208, 242.17(e); *Rebollo–Jovel v. INS,* 794 F.2d 441 (9th Cir. 1986), testimony alone may be sufficient to establish a claim of persecution where the testimony is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of [the applicant's] fear." *Chang,* 7 Immigration Law and Procedure Reporter at B1–44. Ultimately, the decision of whether or not to grant asylum rests within the discretion of the Attorney General, who is not required to grant asylum to all aliens who meet the definition of refugee. *Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 817.

■ In an appeal from a decision of the BIA, the BIA's conclusions of law are reviewed *de novo. Sotelo–Aquije v. Slattery,* 17 F.3d 33, 35 (2d Cir.1994). Factual findings are granted considerable deference. Thus the BIA's factual finding that Chen has not satisfied the applicable standards for asylum must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *see also Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 815. Outright reversal is permissible only if the evidence presented by petitioner "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Id.* Thus petitioner must show that the contrary conclusion was compelled by the evidence, not just a reasonable inference from the evidence. *Id.* at n. 1.

■ Petitioner's argument that *Chang* is in violation of the Refugee Act of 1980 is not persuasive. Petitioner argues that the family planning policy is inherently persecutive and that those who are subjected to it have stated a valid basis for a claim of asylum. Petitioner misreads both the Refugee Act of 1980 and *Chang.* The Act specifically limits the Attorney General's discretion to grant asylum to applicants who fear persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." The Act does not define these terms, but nothing in the Act itself indicates that Congress intended to extend asylum protection beyond these five categories to applications based solely on restrictive family planning policies carried out for the purpose of general population control. *See* S.Rep. No. 256, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 141; H.R.Conf.Rep. No. 781, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.C.C.A.N. 160. Under the regulations promulgated by the Attorney General, the BIA has been delegated the Attorney General's authority to grant asylum to refugees through the adjudication of claims in administrative deportation and exclusion proceedings. The Attorney General retains the discretion to reverse a decision of the BIA

through the certification procedures described at 8 C.F.R. § 3.1(h) or to promulgate a final rule setting the standards to be used in asylum cases. As the Supreme Court has said,

> In unequivocal terms the regulations delegate to the Board discretionary authority as broad as the statute confers upon the Attorney General; the scope of the Attorney General's discretion became the Board's. And if the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience.

*United States ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 266–67, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954).

■ In *Chang,* the BIA did not hold that opposition to the family planning policies of the PRC could not be considered part of a "political opinion." Rather, the Board held that the government of the PRC had adopted a policy "whose stated objective is to discourage births through economic incentives, economic sanctions, peer pressure, education, availability of sterilization and other birth control measures, and use of propaganda." Since "the Chinese Government has stated that it does not condone forced sterilizations and that its policy is to take action against local officials who violate this policy," the Board held that it could not find that "implementation of the 'one couple, one child' policy in and of itself, even to the extent that involuntary sterilizations may occur, is persecution or creates a well-founded fear of persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion' " since the policy itself was based on a neutral principle of population control. The Board held, however, that a specific threat of forced sterilization or abortion could form the basis of a well-founded fear of persecution where the policy was not being carried out even-handedly or for reasons other than the limitation of population growth.

*Chang* does not, however, stand alone, but rather in the midst of conflicting Department of Justice policies on asylum applications under the Act. In *Di v. Carroll,* 842 F.Supp. at 870, Judge Ellis held that "on the question of statutory interpretation at bar, there is a cacophony of administrative voices, each singing a different tune in a different key. Deference to one voice or one tune in these circumstances is unwarranted." However, in considering the BIA's interpretation of the statute, a reviewing court in the Second Circuit has limited discretion, despite the compelling need to create "clarity" among the cacophony. In *Himes v. Shalala,* 999 F.2d 684, 690 (2d Cir.1993), the Court of Appeals reaffirmed that an inconsistency of policy is not, by itself, sufficient to require less deference to an agency's determination. An interpretation will be rejected only where it is unreasonable and at odds with the plain meaning of the statute. That is not the case here. Petitioner has not shown that *Chang* is an impermissible construction of the statute, particularly given the Supreme Court's ruling in *Elias–Zacarias,* 502 U.S. at ——– ——, 112 S.Ct. at 816–17, that forced recruitment by guerrillas into military forces was not necessarily persecution on account of political opinion. *See also Chai v. Carroll,* 858 F.Supp. 569 (E.D.Va.1994) (*Chang* is reasonable interpretation of immigration laws and therefore entitled to deference; claims of validity of January 1990 and January 1993 regulations not considered because not raised before the BIA); *Li Zhi Guan v. Carroll,* CV 94–410–A (E.D.Va. May 13, 1994) (oral opinion upholding *Chang* ); *Saleh v. U.S. Dept. of Justice,* 962 F.2d 234, 239 (2nd Cir.1992) (punishment for violation of a generally applicable criminal law not persecution); *Zepeda–Melendez v. INS,* 741 F.2d 285, 290 (9th Cir.1984) (BIA denial of asylum affirmed where danger facing petitioner was "the same as faced by other Salvadorians"). The *Elias–Zacarias* Court held that persecution must be "on account" of political opinion and not some other reason. *Id.*

■ Petitioner's contention that *Chang* was overruled by interim regulations, President Bush's Executive Order, and the January 1993 Rule must also be rejected. First, petitioner's reliance on the 1990 Interim Rule

is unavailing.[4] The 1990 Interim Rule was in effect for only a few months and was effectively revoked, albeit perhaps mistakenly, by the comprehensive regulations published in July 1990 at 55 Fed.Reg. 30674 (July 27, 1990) after notice and comment. The new regulations specifically addressed the burden of proving eligibility for asylum and withholding of deportation, without proving a specific route for asylum for those subjected to family planning policies. Furthermore, the January 1990 interpretation was not published in the annual codification of Title 8 C.F.R. *See* 8 C.F.R. §§ 208.13, 208.16 (1991). As the court observed in *Di v. Carroll,* 842 F.Supp. at 869, "it appears that the January 1990 Interim Rule did not survive beyond July 1990, when the Attorney General issued a comprehensive revision of the asylum regulation."

■ Second, an Executive Order may not be enforced by a private party where no private right of action is created. *See Haitian Refugee Center v. Baker,* 953 F.2d 1498, 1510–11 (11th Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). President Bush's order directed the Attorney General to take certain action. Although the Attorney General did not take the appropriate action to effect the overruling of *Chang,* that inaction does not provide a mechanism for petitioner to force the Attorney General to exercise her power to change the standards being used by the BIA.

Third, Chen's reliance on the January 1993 Rule must be rejected, despite the acceptance of a similar argument by Judge Patterson in *Zhang v. Slattery,* 859 F.Supp. 708 (S.D.N.Y.1994). In *Zhang,* Judge Patterson relied upon the Freedom of Information Act, which provides in relevant part:

> Each agency shall separately state and currently publish in the Federal Register for the guidance of the public ... (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.... [A] person

may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

Drawing upon language in *State of New York v. Lyng,* 829 F.2d 346, 354 (2d Cir.1987), which held that publication is required only for "matters which if not published would adversely affect a member of the public," Judge Patterson held that, "where a rule confers a substantive benefit to a person, an agency must comply with it, even if the rule is not published." *Zhang,* 859 F.Supp. at 712.

■ However, an agency cannot be bound by a nonpublished rule in a situation in which the agency never actually adopted the rule. The publication requirement of the Freedom of Information Act is intended to prevent an agency from enforcement of a rule without notice, not to bind an agency to rules never enforced. In this case, the regulation limits itself to enforcement after publication and states: "EFFECTIVE DATE: [insert date of publication in the FEDERAL REGISTER]."

*Montilla v. Immigration and Naturalization Serv.,* 926 F.2d 162, 168 (2d Cir.1991), a case from which *Zhang* draws dicta to support the notion that an agency can be forced to follow its own unpublished procedures, the actual holding was only that the INS was required to follow a published rule which benefitted an alien. In *Nguyen v. United States,* 824 F.2d 697 (9th Cir.1987), another case upon which *Zhang* relied, the Ninth Circuit held that the Department of Agriculture's Food and Nutrition Service did not improperly rely upon an unpublished instruction where the instruction did not adversely affect substantive rights.

In addition, Judge Patterson rejected the contention that the final regulations published in February 1993 effectively rejected the January 1993 Rule, noting in a footnote: "Annulment or voidance of the January 1993 Rule would be adverse to petitioner and therefore would be subject to the notice re-

---

**4.** After oral argument, the government filed papers seeking to prevent petitioner from raising this argument here on the ground that petitioner had not presented this argument to the BIA. Since the argument is lacking in merit, the procedural bar need not be addressed.

quirements of 5 U.S.C. § 552(a)(1). Annulment by implication drawn from the omission of the rule from the published regulations is not consistent with the notice requirements of that act." *Id.* at 712. That argument, however, is itself circular, since it requires the assumption that the January 1993 Rule was binding. That assumption, in turn, relies upon the determination that an agency may be required to comply with a regulation never published or adopted.

■ Petitioner's final argument is her most persuasive. Petitioner contends that immigration judges have read the *Chang* decision as precluding any grant of asylum on the basis of persecution caused by opposition or resistance to forced abortion or coerced sterilization. Petitioner argues that the interpretation of *Chang* engaged in by immigration judges prevented her from obtaining serious consideration of her claim by the BIA that she was the subject of past persecution and that PRC officials persecuted others similarly situated either on the basis of actual political beliefs or imputed beliefs.

Her arguments are most compelling when applied to the decision of the BIA. Although the immigration judge may not have considered *Chang* as a bar to her claim of asylum and there is no indication that she was precluded from introducing evidence or testimony at the hearing level about the application of the policy, the BIA's application of *Chang* appears to have been a means of rejecting petitioner's evidence without considering its validity. The BIA's entire decision is five paragraphs long. The response to petitioner's claim that the immigration judge improperly evaluated her credibility is three paragraphs long:

> [Chen] maintains in the appeal that she improperly was denied asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(g). She asserts that it was wrongful for the immigration judge to render an adverse credibility finding regarding her testimony in the case based on "minor and insignificant discrepancies." She asserts that she was a victim of past persecution in China because of her opposition to that country's

coerced birth control policies and that for the same reason she has a well-founded fear and faces the clear probability of persecution upon her return home.

> However, in *Matter of Chang,* Interim Decision 3107 (BIA 1989), this Board expressly held that the enforcement of the Chinese birth control policy is not persecution within the meaning of the Act. To the extent that the policy and enforcement thereof are tied solely to controlling the population, rather than as a guise for acting against a person because of her race, religion, nationality, membership in a particular social group, or political opinion, we cannot find that persons who oppose the policy are victims of persecution or have a well-founded fear of persecution within the present scope of the Act. *Id.* at 11.

> On June 7, 1993, we referred two of our decisions involving this issue to the Attorney General for review under the provisions of 8 C.F.R. § 3.1(h). On June 29, 1993, the Attorney General acted by rescinding the order granting review. Consequently, *Matter of Chang,* a precedent decision, has not been modified or overruled by the Attorney General. We believe that our interpretation of the law in this case is both legally correct and consistent with the Supreme Court's decision in *INS v. Elias–Zacarias,* [502 U.S. 478] 112 S.Ct. 812 [117 L.Ed.2d 38] (1992). In our view, in the absence of other direction from the Attorney General, *Matter of Chang* remains in effect and serves as precedent in all proceedings involving the same issues. *See* 8 C.F.R. § 3.1(g).

In short, the BIA simply failed to address petitioner's claim that the immigration judge improperly concluded that her testimony was incredible. Nor did the Board exercise its power to make its own findings of fact. *Castillo v. Immigration and Naturalization Service,* 951 F.2d 1117, 1120 (9th Cir.1991). Since the BIA did not consider petitioner's arguments about credibility, the opinion appears to read *Chang* as precluding any asylum claim on the basis of the PRC's family planning policy. As noted above, that is contrary to the explicit language of Chang.

The matter must accordingly be remanded to the BIA for further proceedings. As the Ninth Circuit remarked in *Castillo–Villagra v. INS,* 972 F.2d 1017, 1031 (9th Cir.1992), "[I]n order for this court to conduct a proper substantial evidence review of the BIA's decision, the Board's opinion must state with sufficient particularity and clarity the reasons for denial of asylum."

 The BIA's judgment on petitioner's credibility is essential. While the immigration judge gave at least lip service to the *Chang* decision, his own determination of petitioner's claims rested entirely on his finding that petitioner was not credible. That finding is at the least open to question. Credibility findings are granted deference when they are supported by substantial evidence, but an immigration judge must offer a "specific, cogent reason" for rejecting testimony, and those reasons may be evaluated for their adequacy. *Vilorio–Lopez v. Immigration and Naturalization Service,* 852 F.2d 1137, 1141 (9th Cir.1988). Minor discrepancies in testimony, such as confusion over dates, which do not affect the substance of the application for asylum are not an adequate basis for making a finding that an applicant is not credible. *Id.*

Here, the immigration judge's credibility determination rested primarily on two grounds: first, the fact that petitioner's answers to questions asked at entry differed from the answers given in her application for asylum and at the hearing and, second, that petitioner offered no documentary evidence at the hearing. As to the former, petitioner challenged the accuracy of the answers recorded, contending both that she did not understand the questions asked of her and that she was not allowed to explain her answers. Faced with this challenge, the government declined the opportunity to call the inspector as a witness to the circumstances surrounding petitioner's interrogation. As to the assertion that petitioner failed to provide documentary evidence, *Chang* itself noted that such evidence is not essential to a claim of asylum. *See also Gomez v. INS,* 947 F.2d 660, 663 (2d Cir.1991). Although the immigration judge is no doubt faced with the difficult task of sorting through claims of asylum based on actual oppressive use of the family planning polices and the apparently repetitive claims of refugees which seem to contain the same fictitious elements of coercion, petitioner is entitled to due consideration of her claims.

While there may be merit to petitioner's claim that she was persecuted on account of her actual political opinion, or a political opinion imputed to her (particularly in light of the fact that the sanctions of the family planning policy were apparently applied to her after the birth of only one child), the evidence she has presented is not so compelling that reversal of the BIA's determination is warranted. *See Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 817. The case is, however, remanded for the BIA to exercise its judgment and administrative expertise in accordance with this opinion. *See Castillo–Villagra v. INS,* 972 F.2d 1017, 1031 (9th Cir.1992).

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.