**CHEN Chaun Fei, Petitioner,**

v.

**William J. CARROLL, in his official capacity as the District Director of the United States Immigration and Naturalization Service, et al., Respondents.**

Civ. A. No. 94–653–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 1, 1994.

Richard P. Whiteley, Legal Services of Northern Va., Fairfax, VA, for plaintiff.

Kristin Cabral, U.S. Dept. of Justice, Immigration Litigation, Washington, DC, for defendant.

## MEMORANDUM OPINION & ORDER

BRINKEMA, District Judge.

Petitioner is a citizen of the Peoples Republic of China (PRC) who entered the Unit-

ed States illegally on June 6, 1993 aboard the vessel Golden Venture. Petitioner has applied for asylum and withholding of deportation. On August 11, 1993, an Immigration Law Judge (IJ) denied Petitioner's application, finding that Petitioner's fear of forced sterilization upon return to the PRC did not meet the standards for eligibility for asylum or withholding of deportation under Sections 208 and 243(h) of the Immigration and Naturalization Act (the Act), respectively. 8 U.S.C.A. §§ 1158(a) & 1253(h)(1) (1994). On March 9, 1994, the Board of Immigration Appeals (the Board) affirmed the IJ's decision. The Petitioner timely sought review of the Board's decision in this court pursuant to 8 U.S.C.A. § 1105a (1970 & 1994), and seeks a writ of habeas corpus as provided for by 28 U.S.C.A. § 2241 (1994).

■ To qualify for asylum under the Act,[1] an applicant must fall within the statutory definition of "refugee." 8 U.S.C.A. § 1158(a) (1994). The Act defines "refugee" as:

any person who is outside any country of such person's nationality or in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C.A. § 1101(a)(42)(A) (1994). Petitioner claims that he fears that if he returns to his homeland he will be forcibly sterilized or fined in accordance with the PRC's population control policy. He argues that because he opposes the policy, his fear constitutes a well-founded fear of persecution based on a political opinion.

In denying Petitioner's application for asylum, the IJ and Board relied upon the Board's decision in *Matter of Chang*, 89 WL 247513 (BIA 1989). In *Chang*, the Board held that fear of coerced sterilization as part of a governmental population control policy is not itself fear of persecution on the basis of a political opinion. Petitioner argues that *Matter of Chang* has been overturned or, alternatively, that the decision of the Board should not receive the Court's deference. For the reasons discussed below, we reject the Petitioner's argument.

■ Petitioner further argues that the facts found by the IJ support a finding of a well-founded fear of persecution on account of a political opinion. Applying the standards prescribed in *Chang*, we review the record and find that the facts do not support Petitioner's application for asylum.[2]

Because we find that *Chang* remains a valid precedent and that the IJ's factual findings were supported by substantial evidence, the Petition for a Writ of Habeas Corpus is denied.

## A. The Board's and Immigration Judge's reliance on *Matter of Chang*

■ Petitioner argues that the IJ and Board's decisions were in error because they relied on the Board's decision in *Matter of Chang*, 89 WL 247513 (BIA 1989). Because of the convoluted effort to reverse *Chang* administratively, Petitioner argues that *Chang* is not valid precedent. Under the Administrative Procedures Act, courts reviewing agency decisions must consider questions of law *de novo*. 5 U.S.C.A. § 706

1. Fulfillment of the statutory requirements does not guarantee asylum. Rather, once an alien proves that he or she is eligible, it is within the Attorney General's discretion to grant or deny asylum. *INS v. Cardoza Fonseca*, 480 U.S. 421, 428 & n. 5, 107 S.Ct. 1207, 1211 & n. 5, 94 L.Ed.2d 434 (1987).

2. The test for withholding of deportation is more stringent than the test for asylum. To qualify for withholding of deportation, an alien must show that his or her "life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or po-

litical opinion." 8 U.S.C. § 1253(h)(1) (1994). This test requires the alien to show that it is more likely than not that he or she would be subject to persecution on one of the statutory grounds. *See INS v. Stevic*, 467 U.S. 407, 429, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). In contrast, an applicant for asylum must prove only that he or she had a well-founded fear of persecution upon return to his or her country. Since the Petitioner failed to satisfy the requirements for asylum, we do not address the higher standard for withholding of deportation.

(1977). Thus, this Court must determine whether *Chang* was valid legal authority and appropriate precedent for the IJ and Board's decisions. Although the Court conducts a *de novo* review, the legal determinations of the Board in interpreting the Act are entitled to deference by this court. *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994).[3]

Even without giving the appropriate deference to the Board's determination, this Court would find that *Chang* is valid legal authority. As discussed below, the administrative pronouncements that sought to supersede *Chang* are all without force, leaving *Chang* valid precedent.

In 1989, the Board issued its ruling in *Matter of Chang*. The Board held that implementation of the PRC's one-child-one-family policy is not itself persecution and does not necessarily create a well-founded fear of persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion. Rather, an alien would be eligible for asylum only if he or she showed that the PRC population policy was selectively enforced or imposed more harshly to punish him or her on account of one of the enumerated reasons. As an example, the Board explained that evidence that the policy was being selectively applied against members of a particular religious group would support a claim for asylum. In addition, the Board surmised that an alien might be eligible for asylum if the population policy were used to punish his public opposition to the policy. Where, however, the applicant's fear was solely that he would be forced to submit to the PRC's population policy, grounds for asylum are absent.

*Chang* has never been overruled, although several attempts were made by former Attorneys General. In January 1990, an interim rule was published. It stated that "aliens who have a well-founded fear that they will be required to abort a pregnancy or to be sterilized because of their country's family planning policies may be granted asylum on the ground of persecution on account of political opinion." 55 Fed.Reg. 2803 (January 29, 1990). The interim rule amended the regulations for asylum, 8 C.F.R. § 208. However, in July 1990, the Attorney General published a final rule that effected a comprehensive revision of the regulations governing procedures for asylum and withholding of deportation, 8 C.F.R. § 208. 55 Fed.Reg. 30674 (July 27, 1990). The July 1990 final rule did not incorporate the interim rule, and therefore superseded it.

■ Petitioner argues that the July 1990 final rule was not intended to revoke the January 1990 interim rule. Petitioner notes that the preamble to the July 1990 rule makes no mention of the January interim rule. This argument fails because the Attorney General's intention does not affect the validity of the various rules. Regardless of what the Attorney General may or may not have intended, the July 1990 rule was a valid revision of the relevant regulations and did not incorporate the January 1990 rule.

■ The recision of the January 1990 interim rule, whether by implication or oversight, was valid. The rule that an agency may modify or repeal a regulation only if the change is supported by a reasoned explanation does not apply in this case. *See Motor Vehicle Mfrs. Assn. v. State Farm*, 463 U.S.

---

**3.** Petitioner argues that the Board's interpretations of the statute do not merit judicial deference because they are inconsistent. Petitioner notes the inconsistencies among the Board's decision in *Chang* and several attempted but ineffective regulatory efforts by former President Bush and three former Attorneys General. According to Petitioner, the inconsistency among these administrative statements preclude judicial deference to any and all of them. *See Allen v. Bergland*, 661 F.2d 1001, 1004 (4th Cir.1981) (courts are obligated to regard as controlling a reasonable, consistently applied agency interpretation). Petitioner's argument is ill-founded. Al-

though the executive branch has attempted to issue divergent statements on the issue, the Board has consistently followed its reasoning in *Chang*. The Fourth Circuit has held that where "the BIA's interpretation of the statutory section is neither inconsistent nor unjustified, we will uphold the Board's construction." *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 888, 127 L.Ed.2d 82 (1994) (quoting *Chiravacharadhikul v. INS*, 645 F.2d 248, 251 (4th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981)). Thus, the Board's interpretation of the Act is deserving of deference.

29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change"). The *State Farm* holding applies to "settled" rules. *Id.* At the time of its recision, the interim rule had been in existence for only seven months, and was therefore not a "settled" rule.

■ In April 1990, President Bush issued an Executive Order directing the Secretary of State and the Attorney General to "provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990." Exec. Order No. 12711, 55 Fed.Reg. 13,897–98 (1990). Contrary to Petitioner's arguments, the Executive Order did not have the force of law and was not binding on the IJ and the Board. The Executive Order was a directive to the Attorney General and the Secretary of State to "provide for" enhanced consideration. It was not itself a requirement that such enhanced consideration be given.

■ In January 1993, the Attorney General submitted a final rule to the Federal Register for publication. This rule stated that an "applicant shall be found to be a refugee on the basis of a well-founded fear of persecution on account of political opinion" if the alien shows that he or she will be forced to abort a pregnancy or undergo sterilization, or will be persecuted for refusing to do so, in accordance with the family planning policy of the alien's country. The 1993 final rule was never published. Petitioner argues that the rule was effective despite lack of publication; however, it is unnecessary to reach this question. The 1993 final rule provides that it was to become effective *on its date of publication in the Federal Register.*[4] Because the rule

was never published, it never became effective.

Unless modified or overruled by the Board or the Attorney General, decisions of the Board are binding on all Immigration Law Judges. 8 C.F.R. § 3.1(g) (1994). The Attorney General may modify or overrule a Board decision through the referral process prescribed in 8 C.F.R. § 3.1(h) (1994) or through issuance of an effective regulation. As discussed above, none of the regulations addressing the issues in *Chang* were effective at the time of the IJ's decision in this case. Furthermore, the Attorney General has neither modified nor overruled *Chang.*[5] Thus, *Chang* remains in force and was valid, binding precedent for the IJ and Board's decisions.

**B. The Board's Factual Findings**

■ The Board's factual determination that Petitioner was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record as considered as a whole." 8 U.S.C.A. § 1105a(a)(4) (1970); *see also Huaman–Cornelio v. INS,* 979 F.2d 995, 999 (4th Cir.1992) (decision of Board must be upheld if supported by "substantial evidence") (citing *INS v. Elias–Zacarias,* 502 U.S. 478, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992)). Stated differently, the Board's factual determination must be upheld unless the Petitioner shows "that the evidence he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Elias–Zacarias,* 502 U.S. at ——, 112 S.Ct. at 817; *see also Huaman–Cornelio,* 979 F.2d at 999. Petitioner has failed to meet this burden.

We take the facts as alleged by Petitioner as true. Petitioner was born in 1971. Certified Administrative Record 157 [hereinafter A.R.]. Petitioner has one child, a son who was born out of wedlock on February 15, 1992. A.R. 161. Petitioner married the mother of his son, Lin Ying on June 1, 1992.

---

**4.** The rule states: "EFFECTIVE DATE: [Insert date of publication in the FEDERAL REGISTER.]."

**5.** On June 7, 1993, the Chairman of the Board referred two cases to the Attorney General ac-

cording to 8 C.F.R. § 3.1(h)(1)(ii) and specifically requested that *Chang* be approved or overruled. On December 7, 1993, the Attorney General declined to review the cases.

A.R. 161. The couple was below the legal age for marriage and parenthood. A.R. 172, 278. In December of 1992, Lin Ying was pregnant with Petitioner's second child. A.R. 166. Around that time, an unidentified person reported to the authorities that Petitioner and his wife had a child before they were married. A.R. 279. As a result, the population control officials came to Petitioner's shop and discovered that his wife was pregnant with their second child. A.R. 166, 279. The authorities fined Petitioner $7,000 for having a child out of wedlock. A.R. 167, 279. The officials also demanded that Petitioner's wife abort the second pregnancy. A.R. 166, 279. Petitioner did not pay the fine. Instead, he argued with the officials, and a scuffle ensued. Petitioner's wife was pushed to the ground, and Petitioner fled to the home of relatives in another town. A.R. 167, 279. Later, Petitioner learned that his wife had suffered a miscarriage. A.R. 167, 279. After remaining in hiding for two months, Petitioner left China illegally and came to the United States aboard the Golden Venture. A.R. 167, 170–1. Petitioner testified at his hearing before the IJ that he feared he would be punished for failing to pay the fine levied against him for having a child while underage. A.R. 172. He also testified that he feared returning home because he would be punished for leaving the country illegally. A.R. 169.

During the August 11, 1993 hearing before the IJ, Petitioner stated that the government placed a limit on the size of his family because he was a "laborer." A.R. 168. This statement is the sole indication that PRC officials might enforce China's population policy selectively. During cross-examination, however, Petitioner's attorney objected to this characterization of Petitioner's testimony. A.R. 177. She clarified the Petitioner's statement, explaining that Petitioner meant that he could only have one child because he was "an ordinary citizen." A.R. 178. A fair reading of the evidence establishes that Petitioner does not argue that he was selected or punished because of one of the statutory reasons. Rather, he asserts that the policy was enforced against him as against all citizens. This solitary statement is insufficient to compel reversal of the IJ's finding.

Petitioner also complains that his business, a snack store, was taxed at a higher rate than other stores because he did not have friends or relatives in the local government. A.R. 173–177. This allegation in no way compels a finding of persecution for opposition to family planning policies, or any of the statutory reasons.

Chen testified that in June, 1990, while he was a student, he was detained for one month after telling a friend that the government should not use the military to deter a democracy march. A.R. 179–188. However, he did not mention this arrest on his asylum application. A.R. 181, 324. Chen also testified that he was expelled from school in 1989 because he planned to go to a democracy march, even though he never actually went. A.R. 158–159.

In sum, Chen has made a showing that the PRC has tried to apply coercive family planning measures to him, as it does to other PRC citizens, and that he opposes the family planning policy. However, this Court agrees with the IJ that he has not shown that he has been selectively persecuted. That showing is required under the Board decision in *Chang*. Accordingly, the Petition for habeas corpus must be DENIED.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.