Jia–Hu GAO, Petitioner,

v.

Philip L. WATERS, Acting District Director, United States Immigration Service, and Mary Maguire Dunne, Director, Executive Office for Immigration Review, Respondents.

No. C–94–3266 EFL.

United States District Court,
N.D. California.

Nov. 14, 1994.

Jia–Hu Gao, in pro. per.

Patricia A. Duggan, Asst. U.S. Atty., Civ. Div., San Francisco, for defendant/respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

LYNCH, District Judge.

Petitioner Jia–Hu Gao ("Gao"), a citizen of the People's Republic of China ("PRC"), arrived in the United States illegally on June 20, 1993. Gao seeks review of the Board of Immigration Appeals ("BIA") denial of his application for asylum and withholding of deportation, 8 U.S.C. § 1105a (1970 & 1994), and a writ of habeas corpus. 28 U.S.C. § 2241 (1994). For reasons set out below, the petition is denied.

### BACKGROUND

This action is one of many necessitated by "the Department of Justice's continuing failure to resolve the controversy over asylum applications based on the PRC's family planning practices." *Chen v. Slattery*, 862 F.Supp. 814, 815 (E.D.N.Y.1994). The controversy began with the BIA's decision in *Matter of Chang*, Int.Dec. 3107, 1989 WL 247513 (1989), and has intensified in the decision's legislative and executive aftermath. See *Chen*, 862 F.Supp. at 815–817, *Fei v. Carroll*, 866 F.Supp. 283, 285–286 (E.D.Va.

1994), and *Di v. Carroll*, 842 F.Supp. 858, 861–64 (E.D.Va.1994), for excellent discussions of the decision's subsequent history.

In *Chang*, the BIA held that while the PRC's family planning policy could be implemented so as to make it a basis for asylum, "implementation of the 'one couple, one child' policy in and of itself, even to the extent that involuntary sterilizations may occur," is not persecution and does not create a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, within the meaning of § 101(a)(42)(A) of the Immigration and Nationality Act ("INA"). 1989 WL 247513, at *5.

In reaching its decision, the BIA declined to follow 1988 policy guidelines announced by Attorney General Meese. *Id.* at *4. The guidelines directed "INS asylum adjudicators" to give "careful consideration" to the asylum applications of PRC nationals who refused to abort a pregnancy or undergo sterilization as an "act of conscience." The BIA found the Attorney General's directive inapplicable to decisions by immigration judges and the BIA. *Id.*

Not long after *Chang* was decided, Congress attempted to overrule the decision by amending the Emergency Chinese Immigration Relief Act of 1989.[1] Congress passed the bill at the end of November 1989, but President Bush rejected it. His veto notwithstanding, however, the President directed the Attorney General to give "enhanced consideration" under the immigration laws to "individuals from any country who express a fear of persecution upon return to their coun-

---

1. As amended, the Emergency Chinese Immigration Relief Act of 1989 provides, in part, as follows:

> Sec. 3 STANDARDS TO BE APPLIED IN ADJUDICATING APPLICATIONS FOR ASYLUM, WITHHOLDING OF DEPORTATION, AND REFUGEE STATUS FROM CHINESE FLEEING COERCIVE POPULATION CONTROL POLICIES.
> (a) IN GENERAL—With respect to the adjudication of all applications for asylum, withholding of deportation, or refugee status from nationals of China filed before, on, or after the

date of the enactment of this Act, careful consideration shall be given to such an applicant who expresses a fear of persecution upon return to China related to China's "one couple, one child" family planning policy. If the applicant establishes that such applicant has refused to abort or be sterilized, such applicant shall be considered to have established a well-founded fear of persecution, if returned to China, on the basis of political opinion consistent with paragraph (42)(A) of section 101(a) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)).

try related to that country's policy of forced abortion or coerced sterilization." Memorandum of Disapproval for the Emergency Chinese Immigration Relief Act of 1989, 25 *Weekly Compilation of Presidential Documents,* at 1853–54 (1989).

In January 1990, Attorney General Thornburgh issued an interim rule (the "1990 Interim Rule") relating to coercive family planning policies. The rule was published in the Federal Register with requests for comments, *see* 55 Fed.Reg. 2803 (1990), and then became effective on January 29, 1990. According to the 1990 Interim Rule, the PRC's family planning policy and practice could serve as a basis for asylum.[2] *Id.*

Approximately three months later, on April 11, 1990, President Bush issued Executive Order 12,711, underscoring the 1990 Interim Rule. Executive Order 12,711 directed the Attorney General to slow or stop the deportation or exclusion of PRC nationals from the United States. The Order reiterated the directive to "provide for enhanced consideration under the immigration laws for individuals" who expressed a fear of persecution on return to their homelands due to policies of forced abortion or coerced sterilization "as implemented by [the January 1990 Interim Rule]."[3] Exec.Order No. 12,711, 55 Fed.Reg. 13,897 (1990).

Then in July 1990, Attorney General Thornburgh published a final rule ("the 1990 Final Rule") setting out the procedures for determining asylum under § 208 and withholding of deportation under § 243(h) of the INA. *See* 55 Fed.Reg. 30,674 (1990). The rule not only eliminated the 1990 Interim Rule without mention, but it also removed from the asylum regulations any mention of coercive family planning practices.

Confusion as to the status of the 1990 Interim Rule ensued, and in April 1991, the Chief Attorney Examiner of the BIA made a written inquiry to the Appellate Counsel of the Immigration and Naturalization ("INS") on the matter. The Appellate Counsel replied that the January 1990 Interim Rule had not been amended or repealed and that the interim regulation remained the policy of the INS. In a November 1991 memorandum to Regional Counsel and District Counsel, the Office of the General Counsel of the INS indicated that Department of Justice and INS "policy with respect to aliens claiming asylum or withholding of deportation based upon coercive family planning policies is that the application of such coercive policies does constitute persecution on account of political opinion."

In the last days of the Bush administration, in January 1993, the Attorney General signed a final rule (the "1993 Rule"), reiterating the 1990 Interim Rule and overruling *Chang.* The 1993 Rule referred specifically to comments made on the 1990 Interim Rule and amended the regulations to permit asylum on the basis of the PRC's family planning policy.[4] The rule provided that it was

---

**2.** The 1990 Interim Rule provides, in pertinent part, that:

(1) Aliens who have a well-founded fear that they will be required to abort a pregnancy or to be sterilized because of their country's family planning policies may be granted asylum on the ground of persecution on account of political opinion.

(2) An applicant who establishes that the applicant (or the applicant's spouse) has refused to abort a pregnancy or to be sterilized in violation of a country's family planning policy, and who has a well-founded fear that he or she will be required to abort the pregnancy or to be sterilized or otherwise persecuted if the applicant were returned to such country may be granted asylum.

**3.** Executive Order 12,711 provides:

The Secretary of State and the Attorney General are directed to provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990.

**4.** The 1993 Rule provides as follows.

An applicant (and the applicant's spouse, if also applying) shall be found to be a refugee on the basis of political opinion if the applicant can establish that pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion or coerced sterilization, the applicant has been forced to abort a pregnancy or to undergo sterilization or has been persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or

to become effective on its date of publication in the Federal Register.[5]

The 1993 Rule was sent to the Federal Register and scheduled for publication on January 25, 1993, but was never published. When President Clinton was inaugurated on January 22, 1993—three days before the scheduled publication—the proposed director of the Office of Management and Budget issued a directive prohibiting the publication of any new regulation not approved by a Clinton-appointed agency head. Asylum regulations published in the Code of Federal Regulations in February 1993 made no mention of the 1993 Rule. *See* 8 C.F.R. Parts 103, 208, 236, 242, 253 (1993).

Finally, when in December 1993 two cases of individuals seeking asylum based on the population control practices of the PRC were referred to Attorney General Reno for her review pursuant to 8 C.F.R. § 3.1(h)(1)(ii), she declined to resolve any conflict between *Chang* and Executive Order 12,711. The Attorney General stated that "[a]fter review, it is apparent that the BIA's decisions in these cases do not require a determination that one or the other of these standards is

lawful and binding." [6] *See* Atty. Gen. Order No. 1756–93 (June 29, 1993).

## FACTS

Against the backdrop of this controversy, petitioner Gao has sought asylum and withholding of deportation. When he arrived in the United States, petitioner Gao was taken into custody by the INS, and exclusion proceedings were initiated against him pursuant to INA § 236. Petitioner conceded he was excludable from the United States but applied for asylum and withholding of deportation pursuant to INA §§ 208(a) and 243(h).

At a hearing held before an immigration judge on January 25, 1994, petitioner testified in support of his application. According to petitioner, he fled the PRC to escape persecution on the basis of his opposition to the PRC's policy of family planning.

Petitioner and his wife are the parents of three children. After the birth of the couple's second child in 1984, Chinese family planning officials required petitioner's wife to use an intrauterine device ("IUD"), with which practice petitioner agreed. Her use of the IUD notwithstanding, petitioner's wife became pregnant in 1992.

---

avail himself or herself of the protection of, that country because of such persecution.

\* \* \* \* \* \*

An applicant (and the applicant's spouse, if also an applicant) shall be found to be a refugee on the basis of a well-founded fear of persecution on account of political opinion if the applicant establishes a well-founded fear that, pursuant to the implementation by the country of the applicant's nationality or last habitual residence of a family planning policy that involves or results in forced abortion or coerced sterilization, the applicant will be forced to abort a pregnancy or undergo sterilization or will be persecuted for failure or refusal to do so, and that the applicant is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

5. The rule includes the following provision: "EFFECTIVE DATE: [Insert date of publication in the FEDERAL REGISTER.]."

6. The Attorney General's statement provides:
 IN EXCLUSION PROCEEDINGS Pursuant to 8 C.F.R. 3.1(h)(1)(ii), the Board of Immigration Appeals ("BIA") referred, for my review, its decisions in these two cases in which nationals of the People's Republic of China claimed eligi-

bility for asylum and withholding of deportation under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101(a)(42)(A), 1253(h). In both cases, the BIA found that the applicants' evidence was not credible, and that the applicants' accounts, if true, were inadequate to establish eligibility for asylum and withholding of deportation under the interpretation of the INA that the BIA adopted in *Matter of Chang*, Int.Dec. 3107, 1989 WL 247513 (BIA May 12, 1989). The BIA also noted that Executive Order No. 12,711, 55 Fed.Reg. 13, 897 (1990), which sets forth standards for eligibility for asylum and withholding of deportation for aliens fleeing coercive abortion and sterilization policies, is in conflict with *Chang*. *Matter of Chu*, A 71 824 281 (BIA June 7, 1993) at 6–14; *Matter of Tsun*, A 71 824 320 (BIA June 7, 1993) at 7–11. In referring these cases for my review, the BIA requested that I resolve the conflict. I granted the BIA's request for review. Attorney General Order No. 1756–93 (June 29, 1993). After review, it is apparent that the BIA's determination in these cases do [sic] not require a determination that one or the other of these standards is lawful and binding. Because such a determination is not required, the Order granting review is rescinded.

Hours after the couple learned of the pregnancy during a visit to a clinic, government officials arrived at their home and demanded petitioner's wife submit to an abortion. Petitioner's wife became upset at the officials' demand and began to cry. Petitioner indicated to the officials that it was late and that his wife would visit the clinic for an abortion on the following day. The officials agreed and left the couple's home. Later that night, petitioner and his wife fled their home for Fuzhou to avoid having to submit to the abortion.

Before fleeing his home, petitioner Gao worked at a government-owned chemical factory. According to petitioner, the PRC's family planning policy was enforced more strictly against his wife and him, because he was a government employee. Shortly after his departure, petitioner was fired from his job.

Approximately three months after he fled to Fuzhou and lost his job, petitioner returned to his home. On arrival, he was arrested by family planning officials. These officials threatened petitioner with sterilization and persecution, but he managed to escape. He again fled to Fuzhou, where he remained until arrangements were complete for his escape from the PRC.

After the hearing on petitioner Gao's application, the immigration judge denied petitioner's applications for relief and ordered him deported. The court relied in denying the application on the BIA's decision in *Chang.*

Petitioner appealed the decision to the BIA. He argued, among other things,[7] that the immigration judge erred in relying on *Chang* in denying his application. Finding reliance on *Chang* appropriate, the BIA affirmed the immigration judge's ruling denying petitioner's application for asylum on

April 7, 1994. Petitioner seeks relief from the BIA ruling in the instant action.

## DISCUSSION

An alien qualifying as a "refugee" may obtain asylum in the discretion of the Attorney General pursuant to § 208(a) of the INA. *See* 8 U.S.C. § 1158(a). An alien qualifies as a refugee within the meaning of § 208 if he is either unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A); *INS v. Elias–Zacarias,* 502 U.S. 478, 480, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). Except that he faces a different burden of proof, as discussed below, an alien may obtain withholding of deportation on much the same showing. *See* 8 U.S.C. § 1253(h); *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1983). The decision whether to grant asylum, unlike the decision to withhold deportation, however, ultimately rests within the discretion of the Attorney General. *Id.* at 485, 112 S.Ct. at 817.

A decision of the BIA that an applicant has failed to make the requisite showing of persecution or a well-founded fear of persecution is reviewed on a two-tiered standard. Conclusions of law are reviewed de novo. *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir.1988). Factual determinations are granted considerable deference. They must be upheld if "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. at 815 n. 1; *Acewicz v. INS,* 984 F.2d 1056, 1061 (9th Cir.1993). Reversal is warranted only where the evidence "presented was so compelling

---

**7.** Petitioner also appealed to the BIA on two separately stated grounds: (1) that the immigration judge "erred by failing to recognize that opposition to China's forced abortion and sterilization policy constitutes imputed political opinion which is a ground for application for political asylum"; and (2) that the judge "erroneously denied the Applicant's asylum application for lack of corroborative evidence despite the fact that the Applicant had testified plausibly, consis-

tently, and comprehensively to provide a plausible and coherent account on the basis of his fear. The judge incorrectly assumed that corroborative evidence was available to the applicant."

The petitioner has not specifically raised these issues on appeal to this Court. However, in their essential elements, these claims dovetail with the claim the BIA erred in denying petitioner's claim by relying on *Chang,* and they are treated accordingly.

that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at 480–85, 112 S.Ct. at 815–17; *see Abedini v. INS*, 971 F.2d 188, 191 (9th Cir.1992). Applying these principles, the Court turns to the issues on appeal.

Petitioner appeals to this Court on grounds the BIA erred in relying on *Matter of Chang*. According to petitioner, the BIA's reliance on *Chang* to deny his application was inappropriate for three reasons: (1) the decision has been overruled; (2) if the decision has not been overruled, it should be, because it was wrongly decided; and (3) even if the decision stands, it in no way undermines his application. Each is considered in turn.

### I

The Court first considers petitioner's claim that the BIA erred in relying on *Matter of Chang* because the decision has been overruled. According to petitioner, legislative and executive developments subsequent to *Chang* overrule the decision and recognize the PRC's family planning policies as a valid basis for asylum. The Court cannot agree.

Few courts have considered whether *Chang* has been overruled, and those that have are not in accord. At least two district courts have assailed the authority of *Chang*. *See Zhang v. Slattery*, 859 F.Supp. 708 (S.D.N.Y.1994); *Di*, 842 F.Supp. 858. At least three others have more recently recognized *Chang* as good authority. *See Fei*, 866 F.Supp. 283; *Si v. Slattery*, 864 F.Supp. 397 (S.D.N.Y.1994); *Chen*, 862 F.Supp. 814.

Like the courts that have more recently considered the issue, this Court holds that *Chang* has not been overruled. While legislative and executive events subsequent to *Chang* have shaken its foundation, they have not brought the decision down. Congress passed a bill overruling the decision, but President Bush vetoed it. The 1990 Interim Rule recognized the PRC's family planning policies as a valid basis for asylum, but the 1990 Final Rule eliminated the 1990 Interim Rule and removed from asylum regulations any mention of coercive family planning practices. Indications of viability from the Ap-

pellate Counsel and the Office of the General Counsel of the INS are insufficient to preserve the 1990 Interim Rule and render it binding.

 Furthermore, although Executive Order 12,711 reiterated the theme of the 1990 Interim Rule, an Executive Order may not be enforced by a private party where no private right of action is created. *See Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1510–11 (11th Cir.1992), *cert. denied*, 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). Not only does the Executive Order itself not overrule *Chang*, *Si*, 864 F.Supp. at 401, the Attorney General's failure to carry out the order in not overruling *Chang* in no way entitles petitioner to compel the Attorney General to change BIA standards. *Chen*, 862 F.Supp. at 822.

Like Executive Order 12,711, the 1993 Rule reiterated the 1990 Interim Rule in overruling *Chang*. By its own terms, however, the 1993 Rule was to become effective on its publication. Not only was it withdrawn from publication, but when asylum regulations were published in the Code of Federal Regulations in February 1993, they made no mention of the 1993 Rule. Because the 1993 Rule was never published, it did not become effective and, therefore, did not overrule *Chang*.

 Unless modified by the BIA or the Attorney General, decisions of the BIA are binding on immigration judges. 8 C.F.R. § 3.1(g) (1994). The Attorney General may modify a BIA decision through the referral process set out in 8 C.F.R. § 3.1(h) (1994), or through issuance of an effective regulation. The BIA has not modified *Chang*; the BIA has followed it. *See Matter of G—*, Int.Dec. 3215, 1993 WL 522159 (BIA December 8, 1993). The Attorney General has not modified *Chang* pursuant to 8 C.F.R. § 3.1(h). Nor, as discussed above, has the Attorney General issued an effective regulation modifying *Chang*. Petitioner's claim that the BIA erred in relying on *Matter of Chang*, because the decision has been overruled, is unpersuasive.

## II

The Court next considers petitioner's claim that the BIA erred in relying on *Chang* because the decision was wrongly decided and should be overruled. According to Petitioner, the BIA misconstrued § 1101(a)(42)(A) of the INA in rejecting the PRC's policy of family planning as a basis for asylum. The Court cannot agree.

■■■■ The Attorney General has delegated to the BIA the authority to grant asylum to refugees through the adjudication of claims in administrative deportation and exclusion proceedings. *Accardi v. Shaughnessy*, 347 U.S. 260, 266–67, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). In considering the BIA's interpretation of the INA, a reviewing court has limited discretion. *Chen*, 862 F.Supp. at 821. An "inconsistency of policy is not, by itself, sufficient to require less deference to an agency's determination. An interpretation will be rejected only where it is unreasonable and at odds with the plain meaning of the statute." *Id.; see Himes v. Shalala*, 999 F.2d 684, 690 (2d Cir.1993) (according deference to Secretary's interpretation of statute even though inconsistent with prior interpretation because current interpretation was "not at odds with the plain meaning of the statute [and was] reasonable").[8]

As discussed in *Chen*, 862 F.Supp. at 821, and *Si*, 864 F.Supp. at 405, the BIA's interpretation of the statute governing asylum claims in *Chang* is not unreasonable and at odds with the plain meaning of the statute. *See Chai v. Carroll*, 858 F.Supp. 569 (E.D.Va. 1994) (finding *Chang* a reasonable interpretation of immigration laws and therefore entitled to deference); *Guan v. Carroll*, No. CV 94–410–A (E.D.Va. May 13, 1994 (oral opinion upholding *Chang*); *See also Saleh v. Dep't of Justice*, 962 F.2d 234, 239 (2d Cir. 1992) (punishment for violation of generally applicable criminal law not persecution); *Zepeda–Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984) (affirming BIA denial of asy-

lum where danger facing petitioner was "the same as faced by other Salvadorians").

That *Chang* is not unreasonable and at odds with the plain meaning of the INA is made plain by the Supreme Court's decision in *Elias–Zacarias*. In *Elias–Zacarias*, the Court held that a guerilla organization's use of threats of violence to coerce a person into joining its forces in fighting the Guatemalan government did not constitute persecution on account of political opinion within the meaning of § 1101(a)(42). 502 U.S. at 482–83, 112 S.Ct. at 816. The BIA's ruling in *Chang* is of the same stripe, except that it relates to coerced family planning rather than forced military inscription.

■■■■ Accordingly, the Court cannot conclude that the BIA misconstrued § 1101(a)(42)(A) of the INA in rejecting the PRC's policy of family planning as a basis for asylum. Petitioner's claim that the BIA erred in relying on *Chang*, because the decision was wrongly decided and should be overruled, is unpersuasive.

## III

Finally, the Court considers petitioner's claim that the BIA erred in relying on *Chang* because the decision in no way undermines his application. According to petitioner, his application for asylum and withholding of deportation is consistent with *Chang*. The Court cannot agree.

■■■■ *Chang* recognized that the PRC's family planning policy could be "implemented in such a way as to individuals or categories of persons so as to be persecution on account of a ground protected by the Act." 1989 WL 247513, at *5. While the PRC's family planning policy may not serve as a basis for asylum to the extent it is "solely tied to controlling population," it may provide a ground for asylum where it represents "a guise for acting against people for reasons protected by the Act." *Id.* at *5. As explained in *Chang*,

---

**8.** *See also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (indicating the BIA's interpretation of statutory law will be reversed "where 'it appears from the statute or its legislative history' that the

interpretation is contrary to Congress' intent") (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984)).

[a]n individual claiming asylum for reasons related to this policy must establish, based on additional facts present in his case, that the application of the policy to him was in fact persecutive or that he had a well-founded fear that it would be persecutive on account of one of the reasons enumerated in section 101(a)(42)(A). For example, this might include evidence that the policy was being selectively applied against members of particular religious groups or was in fact being used to punish individuals for their political opinions. This does not mean that all who show that they opposed the policy, but were subjected to it anyway, have demonstrated that they are being "punished" for their opinions. Rather, there must be evidence that the government action arises for a reason other than general population control (e.g., evidence of disparate, more severe treatment for those who publicly oppose the policy).

*Id.*

 Important in assessing whether the PRC's family planning policy has been implemented so as to constitute persecution on account of a ground protected by the INA is the allocation of the burden of proof. The burden of proof in asylum and withholding of deportation cases rests on the applicant. *See* 8 C.F.R. §§ 208.1 et seq., 242.17(e); *Rebollo-Jovel v. INS,* 794 F.2d 441, 448 (9th Cir. 1986). An alien seeking asylum must establish refugee status by showing that he has suffered persecution or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). An alien seeking to withhold deportation faces a similar but higher burden. An alien seeking to withhold deportation must establish that it is more likely than not that he would be persecuted if returned to his own country and that a clear probability of harm exists. 8 U.S.C. § 1253(h); *see INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1983); *Sotelo-Aquije v. Slattery,* 17 F.3d 33, 38 (2d Cir.1994).

 To conclude that the BIA erred in finding that petitioner Gao failed to carry his burdens of proof, this Court must find that the evidence presented in support of his application was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution. *See Elias–Zacarias,* 502 U.S. at 480–85, 112 S.Ct. at 815–17. Petitioner failed to adduce, and the BIA to disregard, evidence permitting this conclusion.

No doubt petitioner has presented evidence of generally oppressive conditions. The PRC's family planning policy runs counter to fundamental notions of individual freedom. That notwithstanding, the BIA's decision in *Chang* controls the admission of applicants for asylum on grounds of the PRC's family planning practices. As required under *Chang,* petitioner has made no showing that the policy was applied to him for reasons other than population control. Nothing indicates the application of the policy to Gao was in fact persecutive or that he had a well-founded fear that it would be persecutive on account of one of the reasons enumerated in section 101(a)(42)(A).

Petitioner claims that the BIA erred in rejecting his claim for asylum on grounds that the PRC's family planning policy was more strictly enforced against his wife and him because of his employment with the government. Even assuming petitioner's employment at and discharge from a government factory, about which the immigration judge appears to have had some doubt, the BIA rejected the claim on grounds petitioner failed to carry his burden of proof to establish it. The BIA credited petitioner's testimony that his co-workers at the factory were subjected to the same policy as him and found that the actions taken against petitioner and his family upon his wife's third pregnancy were not shown to be exceptionally severe. The PRC's family policy notwithstanding, petitioner and his wife have had three children. No evidence indicates the policy was selectively applied against Gao as a member of a particular religious group or to punish him for his political opinions. After independent review of the administrative record, this Court cannot say the BIA erred in rejecting this claim. Accordingly, petitioner's claim that the BIA erred in relying on *Chang,* because the decision in no way undermines his application, is unpersuasive.

## CONCLUSION

This Court cannot conclude that *Chang* has been overruled; that it was wrongly decided; or that it in no way undermines petitioner Gao's application for asylum and withholding of deportation. *Chang* stands as binding precedent on immigration judges and the BIA, and the BIA properly affirmed the immigration judge's reliance on the decision in the instant case. The petition for habeas corpus is denied.

IT IS SO ORDERED.