84 F.3d 82
 Jia-Ging DONG a/k/a Jia-Qing Dong, Petitioner-Appellant,
v.
William SLATTERY, District Director of the United States
Immigration and Naturalization Service, New York District
and David L. Milhollen, Director of the Executive Office for
Immigration Review and Chairman of the Board of Immigration
Appeals, Respondents-Appellees.
 No. 754, Docket 94-2723.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1996.
Decided May 13, 1996.
 
 Theodore N. Cox, New York City, for petitioner-appellant.
 Diogenes P. Kekatos, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Steven I. Froot, Asst. U.S. Atty., New York City, on the brief), for respondents-appellees.
 (Joseph P. Secola, Vincent P. McCarthy, McCarthy & Secola, New Milford, CT, Thomas P. Monaghan, New Hope, KY, Keith A. Fournier, Virginia Beach, VA, submitted a brief for amicus curiae The American Center for Law and Justice, Human Life and Reproduction Project).
 Before: NEWMAN, Chief Judge, MAHONEY and FRIEDMAN,* Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 This appeal concerns an unfortunate lack of coordination between the Legislative and Executive Branches on a matter involving deportation to the People's Republic of China ("PRC") of aliens who fear that their forced return will subject them to their country's population control policies, including forced sterilization and coerced abortion. Though both Branches have separately indicated their intention to provide relief for such aliens, they have not done so in a coordinated manner that authorizes the Judicial Branch to intervene.
 
 
 2
 Jia-Ging Dong appeals from the December 5, 1994, judgment of the United States District Court for the Southern District of New York (Michael B. Mukasey, Judge), denying his petition for a writ of habeas corpus. Dong contends that the District Court erred in finding that he was ineligible for asylum or withholding of deportation. Because Dong's principal arguments are foreclosed by our prior decision in Zhang v. Slattery, 55 F.3d 732 (2d Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996), and his new arguments are legally unavailing, we are obliged to affirm. We do so, however, with considerable regret that the expressed intentions of the political branches have not yet combined to produce a judicially enforceable protection for aliens such as Dong.
 
 Background
 
 3
 Dong was one of 300 aliens trying to be smuggled into the United States aboard the Chinese freighter "Golden Venture," which ran aground on a New York beach in 1993. He has been held in the custody of the Immigration and Naturalization Service ("INS") as an excludable alien ever since. Ultimately acknowledging that he was subject to deportation, Dong sought administrative relief from the INS in the form of either asylum, 8 U.S.C. § 1158 (1994), or withholding of deportation, 8 U.S.C. § 1253(h)(1) (1994).
 
 
 4
 His claim for administrative relief was based on the following circumstances. In an effort to limit population growth, the PRC pursues a "one couple, one child" policy, normally limiting families to one child. Dong alleges that in the Fujian Province, where he lived, this policy is often enforced by compulsory sterilization or forced abortion. Following the birth of his first child, local officials permitted Dong and his wife to have a second child because the first one suffered from polio. After the birth of the second child, local officials ordered Dong's wife to insert an IUD. She complied, but nevertheless became pregnant. Local officials then ordered her to have an abortion and warned that if she fled to avoid the abortion, her house would be destroyed. Despite the threat, the couple fled to a relative's home in a nearby village.
 
 
 5
 Dong's father visited them and reported that local officials had beaten him, destroyed some of the contents of the couple's home, and threatened to beat Dong and force his wife to have an abortion if they were located. That report prompted Dong to flee to this country. Dong later learned that his wife, then four and one-half months pregnant, had been forced to have an abortion.
 
 
 6
 Dong recounted these circumstances to the Immigration Judge ("IJ") hearing the asylum request and also stated his belief that, if sent back to China, he would be severely punished for aiding his wife to evade state policy and would receive added punishment for leaving his country. The IJ found Dong's testimony "credible in every respect." Nevertheless, asylum was denied, in reliance on the decision of the Board of Immigration Appeals ("BIA") in Matter of Chang, Interim Decision No. 3107, 1989 WL 247513 (BIA May 12, 1989). Chang held that the PRC's implementation of its family planning policies normally does not entitle an alien to asylum. The IJ noted that asylum might be available if an individual faced harsher treatment than usual, not merely through the routine enforcement of the "one family, one child" policy, but because of that individual's public opposition to the policy. However, the IJ found no evidence in Dong's case of the threat of such enhanced punishment for political views. Dong was therefore ordered excluded and deported.
 
 
 7
 The BIA denied an administrative appeal, and the District Court denied Dong's petition for habeas corpus. Dong v. Slattery, 870 F.Supp. 53 (S.D.N.Y.1994).
 
 Discussion
 
 8
 Our prior decision in Zhang forecloses nearly all of Dong's arguments. The BIA decision as to Dong, like its earlier decision as to Zhang, rested on the 1989 decision in Chang, and our decision in Zhang ruled that Chang was still the law guiding BIA decisions, despite the numerous legislative and executive attempts to overturn it. Zhang, 55 F.3d at 743-49 ("[N]one of the actions taken by the Bush Administration overturned Chang."); accord Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1338-41 (4th Cir.1995); Gao v. Waters, 869 F.Supp. 1474, 1480 (N.D.Cal.1994).
 
 
 9
 Our prior opinion in Zhang comprehensively sets forth the somewhat bizarre history of governmental efforts to modify the BIA's view that enforcement of population control by means of forced sterilization or coerced abortion does not entitle an alien to asylum. Zhang, 55 F.3d at 738-43. There have been at least four separate attempts to overturn Chang: (1) House Bill 2712, H.R. 2712, 101st Cong., 1st Sess. § 3(a) (1989) (the Emergency Chinese Immigration Relief Act of 1989), passed by both houses of Congress, but vetoed by President Bush on the ground that he could accomplish Congress's laudable objectives by executive action, see Mem. of Disapproval for the Bill Providing Emergency Chinese Immigration Relief, 1989 Pub.Papers 1611-12 (Nov. 30, 1989); (2) the January 1990 Interim Rule, 55 Fed.Reg. 2803, 2805 (1990), which would have overruled Chang, but which never became effective; (3) Executive Order 12,711, 55 Fed.Reg. 13,897 (1990), issued by President Bush on April 11, 1990, directing the Secretary of State and the Attorney General to provide "enhanced consideration" for aliens fearing forced abortion or coerced sterilization; and (4) the January 1993 Final Rule, Att'y Gen.Order No. 1659-93, § 208.13(b)(2)(ii) (1993), signed January 15, 1993, by Attorney General Barr, but not effective for lack of publication, which would have accorded relief to aliens fearing forced sterilization or coerced abortion. Zhang also noted an order of Attorney General Reno, issued in December 1993, declining the BIA's request for resolution of the apparent conflict between Executive Order 12,711 and Chang. See Att'y Gen.Order No. 1756-93 (1993). We also note that even now Congress is considering a bill that would overrule Chang. See House Bill 2202, H.R. 2202, 104th Cong., 2d Sess. § 501(a) (1996) (the Immigration in the National Interest Act of 1995) (passed by House of Representatives and currently pending in Senate).
 
 
 10
 In his reply brief, Dong points to an additional (and heretofore unconsidered) governmental action, which he claims succeeded in overturning Chang. In the Chinese Student Protection Act § 2(b)(1), Pub.L. No. 102-404, 106 Stat. 1969, 1969 (1992) ("CSPA"), reprinted in 8 U.S.C. § 1255 note (1994), Congress explicitly incorporated by reference a portion of Executive Order 12,711. Dong argues that this incorporation acts as a Congressional ratification of the entire executive order. The CSPA, however, and the portion of the executive order incorporated therein, deals with only a small group of Chinese nationals who arrived in the United States prior to June 5, 1989. Congress did not express any intention in the CSPA to overturn Chang, which deals with the much different (and potentially much larger) group of Chinese nationals who are continually arriving in the United States and seeking asylum based on China's family planning policy.
 
 
 11
 Dong further seeks to avoid the force of Zhang by making the novel argument that a combination of Executive Order 12,711 and the Administrative Procedure Act ("APA") serves to overrule Chang. In Zhang, we held that Executive Order 12,711 was not judicially enforceable because it did not create a private right of action.[1] Zhang, 55 F.3d at 747-48; accord Chen Zhou Chai, 48 F.3d at 1338-40; Gao, 869 F.Supp. at 1480. Dong argues, however, that even if Executive Order 12,711 fails to create a private right of action in and of itself, the APA nevertheless provides a sufficient, independent basis for asserting standing to gain relief.
 
 
 12
 Dong cites National Wildlife Federation v. Babbitt, 37 Env't Rep.Cas. (BNA) 1670, CIV.A. No. 88-0301, 1993 WL 304008, at * 8 (D.D.C. July 30, 1993), for the proposition that the APA may serve to enforce an executive order against an administrative agency's failure to act. However, that decision held that an executive order may be judicially enforceable only if it "has the force of law...." Id.; see also Independent Meat Packers Association v. Butz, 526 F.2d 228, 235-36 (8th Cir.1975) (finding that executive order directed to executive branch officials was "intended primarily as a managerial tool for implementing the President's personal economic policies and not as a legal framework enforceable by private civil action"), cert. denied, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976).
 
 
 13
 As we ruled in Zhang, Executive Order 12,711 is not based on any specific law-making authority derived from an express or implied grant of Congressional power. Zhang, 55 F.3d at 747-48. Therefore, Executive Order 12,711 does not have the force or effect of law. See Chen Zhou Chai, 48 F.3d at 1339. Judicial enforcement under the APA is unavailable. See National Wildlife, CIV.A. No. 88-0301, 1993 WL 304008, at * 8.
 
 
 14
 The only other argument that Dong presents to distinguish his case from Zhang is also without merit. Dong argues that Zhang is factually inapposite because, in that case, the petitioner claimed only a prospective fear of persecution, whereas Dong claims actual persecution. Nothing in Zhang or Chang, however, limits their application to only those cases where the persecution is prospective in nature. Chang states simply:
 
 
 15
 We cannot find that implementation of the "one couple, one child" policy in and of itself, even to the extent that involuntary sterilizations may occur, is persecution or creates a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." ... To the extent ... that such a policy is solely tied to controlling population, rather than as a guise for acting against people for reasons protected by the Act, we cannot find that persons who do not wish to have the policy applied to them are victims of persecution or have a well-founded fear of persecution within the present scope of the Act.
 
 
 16
 Matter of Chang, Interim Decision No. 3107, 1989 WL 247513.
 
 
 17
 The fact that Dong alleges actual persecution rather than a well-founded fear of persecution is immaterial. Dong must still show that the application of China's family planning policy against him is based on a motivation other than general population control. Dong has not made such a showing.[2]
 
 
 18
 At oral argument, the Government acknowledged that Dong was entitled to apply for discretionary parole, pursuant to an INS memorandum of August 5, 1994, entitled Processing of Chinese Nationals Who Fear Coercive Family Planning Practices. We have since been advised that Dong applied for such relief, but the District Director of the INS at New Orleans, La., denied the request on February 23, 1996. No issue concerning the lawfulness of that denial is before us.
 
 
 19
 Since we are constrained by our prior precedent in Zhang to uphold Matter of Chang, and the BIA properly applied Chang in this case, the District Court's denial of Dong's petition for a writ of habeas corpus is affirmed.
 
 
 
 *
 Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 Executive Order 12,711 is directed solely toward the Secretary of State and the Attorney General. The order states: "The Secretary of State and the Attorney General are directed to provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization...." Exec.Order 12,711
 
 
 [2]
 The argument presented by amicus curiae on behalf of Dong is also without merit. Amicus curiae argues that the "resurrection" of Chang by the BIA in 1993 was a de facto change in policy, requiring notice and comment pursuant to the APA. As this Court stated in Zhang, however, there simply was no such "resurrection" or change in policy. "[T]he BIA has followed its holding in Chang every time it has been asked to consider the PRC 'one child' issue." Zhang, 55 F.3d at 750; see also Dong, 870 F.Supp. at 59 ("The policy consistently adhered to by the BIA and applied to aliens seeking asylum based on the 'one child' rule is the policy articulated in Chang."). Therefore, the APA's requirement of notice and comment is inapplicable to Chang